UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID EGGLESTON and
WILLIAM YEAGER,

              Plaintiffs,

        -v-                        3:20-CV-56

CITY OF BINGHAMTON and
CLARENCE E. SHAGER, JR.,
Individually, also known as
Chuck,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

HINMAN, HOWARD LAW FIRM      DAWN J. LANOUETTE, ESQ.
Attorneys for Plaintiffs
80 Exchange Street, P.O. Box 5250
700 Security Mutual Building
Binghamton, NY 13902

BOND, SCHOENECK & KING, PLLC    MICHAEL D. BILLOK, ESQ.
Attorneys for Defendants
22 Corporate Woods Boulevard, Suite 501
Albany, NY 12211

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      On January 15, 2020, plaintiffs David Eggleston ("Eggleston") and William Yeager

("Yeager") (collectively "plaintiffs") filed this action against the City of Binghamton (the "City")

and City Comptroller Clarence E. Shager, Jr. ("Shager").  Eggleston, who recently retired as

an Assistant Chief of Police, and Yeager, who is still employed as an Assistant Chief, allege that the City and Shager (collectively "defendants") violated the Fair Labor Standards Act ("FLSA") and related state law by refusing to credit them for certain overtime and holiday pay.  Defendants have moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint in its entirety.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**

The following facts are taken from plaintiffs' operative pleading, Dkt. No. 1, and are assumed true for the purpose of deciding the motion to dismiss.

Beginning in 2008, Eggleston and Yeager took on the role of Assistant Chiefs of Police for the City of Binghamton.  Compl. ¶¶ 3, 5.  Plaintiffs worked a weekday schedule of 8 a.m. to 4 p.m. that did not include any break for lunch.  *Id*. ¶ 28.  According to plaintiffs, the City treated all eight hours of this lunch-less work schedule as an "hour worked" for the purpose of calculating pay and leave accrual.  *See id.* ¶ 29.  As plaintiffs explain, the nature of plaintiffs' work as Assistant Chiefs made it impractical to "dedicate a specific block of time in any workday to ignoring their police responsibilities."  *Id*.

Until 2010, plaintiffs were covered by a collective bargaining agreement ("CBA") between the City and the Police Benevolent Association ("PBA"), the bargaining unit for most of the other officers on the force.  Compl. ¶ 20.  As relevant here, the CBA provided for two forms of "compensatory time."  *Id*. ¶¶ 21-24.  Also known as "comp time," compensatory time is a specified period of paid leave that an employer awards in lieu of paying a higher overtime rate that would otherwise be applicable.  *Id*.  Once earned, this "comp time" could be carried over from year to year with approval from the Chief of Police.  *Id*.

First, the CBA provided that two full days of "comp time" would accrue whenever an Assistant Chief worked a designated holiday.  Compl. ¶ 21.  Second, the CBA provided that any employee could accrue one and one-half hours of "comp time" for each hour worked overtime; *i.e.*, any work assignment beyond that employee's scheduled work shift.  *Id*. ¶ 23. Although the "comp time" for holidays was awarded as of right, the "comp time" for overtime was apparently awarded at the Chief's discretion.  *Id*.

According to the complaint, the Chief directed plaintiffs and other officers "to bank and use comp time in lieu of being paid overtime, for budgetary reasons."  Compl. ¶ 23.  Plaintiffs allege that during this period they (and other officers) "routinely were allowed to and did carry over more than 80 hours of comp time per year."  *Id*. ¶ 25.  Plaintiffs further allege that during this period the City "paid out accrued comp time to employees upon their termination from employment," whether or not this accrued time exceeded eighty hours.[1]  *Id*. ¶¶ 26-27.

In 2010, an administrative determination by the New York State Public Employment Relations Board ("PERB") concluded that Eggleston and Yeager were managerial employees and removed them from the PBA.  *See* Compl. ¶ 30.  Consequently, plaintiffs stood to lose out on certain employment benefits that the other, non-managerial police officers would continue to enjoy as part of the police union.  *Id*.  According to plaintiffs, they agreed not to appeal the PERB's determination about their status in exchange for certain guarantees from the City that "their terms and conditions of employment as existed under the CBA would continue with a few exceptions."  *Id*. ¶ 31.

Plaintiffs allege that some of these guarantees were recorded in contemporaneous

---

[1]  In some employment arrangements, the employer limits the amount of hours an employee can carry over from year to year.

changes to the City's Code while others "were confirmed by the continued practices" of defendants.  Compl. ¶ 31.  In particular, these guarantees included:  (a) a roughly $4000 increase in annual salary accompanied by a "modified comp time formula" that, upon approval by the Chief, permitted an Assistant Chief to "earn one day, at straight time, of comp time that would be banked" in the City's records; (b) continued eligibility for overtime that could be banked as "comp time" with the Chief's approval; (c) a continued weekday schedule of 8 a.m. to 4 p.m., with no lunch break; (d) the ability to carry over accrued "comp time" from year to year; and (e) the promise that unused "comp time" would be paid out by the City upon retirement or separation from employment.  *Id*.

Despite these guarantees, in 2011 the City added a new provision to its Code that "purported to amend the Assistant Chief's workday to be eight (8) hours per day, not including one (1) hour for lunch."  Compl. ¶ 32 (internal quotation marks omitted).  According to plaintiffs, the City added this forced-lunch language to its Code based on its "belief that it was consistent with rule or law of the State of New York."  *Id*. ¶ 33.

Notably, however, plaintiffs allege that the City never tried to put into practice what it put down on paper.  Compl. ¶¶ 33-35.  Plaintiffs allege the City never advised the Police Bureau, the City, or either of them about this new lunch requirement.  *Id*.  Equally important, plaintiffs allege the City never made any attempt to enforce this requirement against them, either.  *Id*. ¶¶ 33, 35.  Instead, even after their 2010 removal from the PBA, plaintiffs continued to use and accrue "comp time" with the express approval of the Chief.  *Id*. ¶ 38.

Everything was fine until April 2019, when Eggleston notified the City of his intent to retire and requested an estimate of his separation benefits.  Compl. ¶ 37.  Although Eggleston believed this estimate would include a substantial dollar amount for all the unused

"comp time" he had accrued over his years of service, the City decided it was not going to pay him for any of that accrued time.  *Id*.  Instead, defendants "advised for the first time that Assistant Chiefs were not eligible for comp time . . . because comp time is not expressly identified as a term or condition of employment" in the City's Charter and Code.  *Id*. ¶ 38. Defendants further advised that plaintiffs "would not in any way be compensated for the comp time that had been designated and approved by the Chief" and "memorialized in [the] City's financial records."  *Id*. ¶ 39.

Thereafter, the City instructed plaintiffs to change their work schedule to a nine-hour workday that would now include the non-working lunch hour that had been required under the Code since 2011.  Compl. ¶ 41.  Plaintiffs allege "no other City employee with a schedule that did not permit them an uninterrupted lunch was required to change their schedule or take lunch."  *Id*. ¶ 42.  Plaintiffs further allege the City threatened to notify the State of New York that they had not been taking these lunch breaks unless plaintiffs agreed to abandon their claims for earned and banked "comp time."  *Id*. ¶ 43.  According to plaintiffs, City officials told them that they "hope[d]" the State would penalize plaintiffs and force them to reimburse the City for those unused lunch hours.  *Id*.

Since the City refused to pay him out for his accrued time, between April 2019 and his retirement on July 12, 2019, Eggleston—with the knowledge, consent, and approval of the Chief—used up all the "comp time" he had earned and that was banked in the City's records.  Compl. ¶ 46.  According to plaintiffs' complaint, the City retaliated against Eggleston's lawful use of this "comp time" by deducting roughly $9,672.59 "from the accrued but unused vacation pay" that was also owed to him.  *Id*. ¶ 47.  Eggleston has demanded reimbursement of that sum, but the City has refused to pay.  *Id*. ¶ 48.

Yeager, who still works for the City as an Assistant Chief, "has continued to use a portion of the comp time that had been earned and that was and is banked" in the City's financial records.  Compl. ¶ 49.  However, Yeager has been told by the City that he must reimburse defendants "in the amount of the value of said used comp time, and that any remaining comp time . . . has been or will be forfeited."  *Id*. ¶ 50-51.

## III.  LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted).  "In making this determination, a court generally confines itself to the facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  *Forjone*, 414 F. Supp. 3d at 298 (citation and internal quotation marks omitted).

## IV.  DISCUSSION

Plaintiffs' complaint enumerates thirteen[2] causes of action for overtime, comp time,

---

[2]  The complaint accidentally double-counts the fourth cause of action, *compare* Compl. ¶¶ 83-39, *with id*. ¶¶ 90-96, and then gives up on the numbering convention completely for the latter half of the claims alleged, *id*. ¶¶ 104-47.  Such carelessness by plaintiffs' attorneys has been corrected by re-numbering the fifth cause of action and adding numerical designations to claims six through thirteen.

and holiday pay violations under the FLSA and New York Labor Law ("NYLL") (First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh Causes of Action), an FLSA claim for retaliation (Seventh Cause of Action), and common law claims for breach of contract (Twelfth Cause of Action) and unjust enrichment (Thirteenth Cause of Action).

As an initial matter, plaintiffs' NYLL claims (Eighth, Ninth, Tenth, and Eleventh Causes of Action) must be dismissed because those provisions do not apply to public employers like the City.  Defs.' Mem., Dkt. No. 11-1 at 15.[3]  Plaintiffs acknowledge as much.  Pls.' Opp'n, Dkt. No. 19 at 1 n.1 ("Plaintiffs concede New York Labor Law is not applicable to their claims, and withdraw their state statutory claims.").

Turning to the remaining issues, defendants contend that plaintiffs' FLSA claims must be dismissed because they are both "exempt" employees, a category of workers who are not entitled to overtime pay under the statute.  Defs.' Mem. at 8.  Alternatively, defendants contend that plaintiffs have failed to allege plausible FLSA claims because they have not specifically identified the week or weeks in which the violation or violations allegedly occurred.  *Id*. at 12-16.

Next, defendants argue that plaintiffs' FLSA retaliation claim must fail because they have not alleged any facts from which to conclude that either Eggleston or Yeager put the City on notice of any underlying FLSA violation.  Defs.' Mem. at 16-18.  Finally, defendants identify a number of reasons that plaintiffs' state law claims should also be dismissed.  *Id*. at 18-21.

Plaintiffs respond that the question of whether or not an employee is "exempt" is a

---

[3] Pagination corresponds with CM/ECF.

mixed question of law and fact that is better-suited for resolution at summary judgment.  Pl.'s Opp'n at 4.  Plaintiffs further argue that they have sufficiently pleaded all of their claims, including their related claims that arise under state law.  *Id*. at 7-23.  In short, plaintiffs contend that defendants' arguments rely on a version of events that should be tested in discovery, not rewarded with pre-answer dismissal.  *Id*.

## A. <u>The Fair Labor Standards Act</u>

Congress enacted the FLSA to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), and to "guarantee[ ] compensation for all work or employment engaged in by employees covered by the Act," *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944).  "Subject to certain exceptions, the FLSA, and the analogous provisions under NYLL, require that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay."  *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) (citations omitted).

For example, employees are exempt from the overtime provisions if they are "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1); N.Y. LAB. LAW § 651(5)(b).  However, the FLSA itself does not define what counts as "executive, administrative, or professional" employment.  Instead, the Act directs the Secretary of Labor to "define[ ] and delimit[ ]" those terms "from time to time by regulations."  29 U.S.C. § 213(a)(1).  Accordingly, "[t]he Secretary's regulations have the force of law, and are generally giving controlling weight."  *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 59 (E.D.N.Y. 2011).

Under Department of Labor ("DOL") regulations, the term "employee employed in a bona fide executive capacity" means any employee:  (1) "[c]ompensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week"; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;" (3) "[w]ho customarily and regularly directs the work of two or more other employees;" and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).

In other words, the test for whether an employee is a bona fide executive includes both a "salary basis" component and a "duties" component.  *McLean v. Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 337 (S.D.N.Y. 2011).  Importantly, "[t]he employer has the burden of proving that the employee clearly falls within the terms of [an] exemption."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009).  "And because the FLSA is a remedial statute, [these exemptions] must be 'narrowly construed.'"  *Id*. (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

In sum, "[t]he exemption question under the FLSA is a mixed question of law and fact."  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (cleaned up). "The question of how the [employees] spent their working time . . . is a question of fact.  The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law[.]"  *Id*. (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

### 1.  The Duties Test

Defendants contend that plaintiffs' employment meets the "duties" component of the test as a matter of law because:  (1) an opinion letter from the DOL's Wage and Hour Division advises that positions such as that of "Police Lieutenant" and "Fire Battalion Chief" are exempt under the FLSA "because their duties involved supervising subordinates and participating in budget preparation and management"; and (2) the 2010 PERB determination that removed plaintiffs from membership in the PBA "established that the two Plaintiffs perform management functions."  Defs.' Mem. at 9-10.

### i.  DOL Opinion Letter

Upon review, defendants' argument about the DOL opinion letter must be rejected at this stage of the proceedings.  Whether or not consideration of the letter is appropriate on a pre-answer motion to dismiss, plaintiffs correctly argue that it does not defeat their claim as a matter of law.[4]

"[U]nlike regulations, agency opinion letters are entitled to 'limited deference.'"  *Kipple v. Monroe County,* N.Y., 847 F. Supp. 2d 471, 478 (W.D.N.Y. 2012) (quoting *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115, 127 (2d Cir. 2008)); *see also Hill v. Delaware North Cos. Sportservice, Inc.*, 838 F.3d 281, 290 (2d Cir. 2016) (explaining that DOL opinion letters are not binding but are often relied on for guidance).

This letter—like every opinion letter—explicitly confines itself to the facts and circumstances described by the party who requested the advice.  In opinion FLSA2005-40, the DOL considered "whether a particular city's Police Lieutenants, Police Captains, and Fire

---

[4]  The letter is a publicly available document but not attached to the pleading.  It is available at the DOL's website:  http://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2005_10_14_40_FLSA.pdf.

Battalion Chiefs are exempt from the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA)."  After summarizing the duties and salary information provided for each of those job titles and considering whether certain regulatory exceptions might apply, the DOL opined that "the duties described in your letter are sufficient to qualify the City's Police Lieutenants, Police Captains, and Fire Battalion Chiefs as exempt from the minimum wage and overtime provisions of the FLSA."

Defendants insist that this also applies to plaintiffs, since they are higher ranking officers (as Assistant Chiefs) than the police lieutenants at issue in the DOL opinion letter.  According to defendants, plaintiffs therefore "possess vastly more managerial responsibilities."  But this is little more than an *ipse dixit* right now.  As the DOL opinion letter warned, its conclusion would only hold true "so long as the actual duties performed by these employees are consistent with those described."

The regulations explain that "[a] job title alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations."  29 C.F.R. § 541.2.  In other words, it is the *actual duties* performed by the employee, not the employee's title on some HR documents, that controls this analysis.

Defendants have not even tried to explain how plaintiffs' factual allegations, which must be assumed true for purposes of this motion to dismiss, match up with all the duties described in the DOL's opinion letter.  A showing at or near that threshold would be required to find pre-answer dismissal appropriate based solely on the letter.  Accordingly, this argument will be rejected.

### ii. **Collateral Estoppel**

Collateral estoppel does not bar this suit, either. "Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Cayuga Nation v. Tanner*, –F. Supp. 3d–, 2020 WL 1434157, at *13 (N.D.N.Y. Mar. 24, 2020) (quoting *Postlewaite v. McGraw–Hill*, 333 F.3d 42, 48 (2d Cir. 2003)).

Thus, collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999)).

In support of dismissal, defendants assert that the 2010 PERB determination that removed plaintiffs from membership in the PBA also established that the plaintiffs were responsible for "management functions." Defs.' Mem. at 9. According to defendants, the adjudicator's findings are entitled to preclusive effect in this litigation. *Id*.

Generally speaking, federal courts "give preclusive effect to a state agency's administrative findings if the state's courts would do the same." *Ferraro v. N.Y. City Dep't of Educ.*, 752 F. App'x 70, 73 (2d Cir. 2018) (summary order); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986) (characterizing it as "sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity"). "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has

been a full and fair opportunity to litigate." *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005).

As relevant here, courts in this Circuit have held that the PERB acts in a quasi-judicial capacity because it has the power to conduct hearings in which it administers oaths, examines, witnesses and documents, takes testimony, receives evidence, and issues subpoenas. *Kipple v. Monroe County, N.Y.*, 847 F. Supp. 2d 471, 477 (W.D.N.Y. 2012) (quoting *Gemerek v. Buffalo Sewer Auth.*, 2011 WL 3047737, at *6 (W.D.N.Y. July 25, 2011)).

This argument will also be rejected.  The PERB determination cited by defendants arose out of the Binghamton Police Supervisors Association's attempt to displace the Binghamton PBA as the bargaining representative for the department's supervisory employees.  *In the Matter of Binghamton Police Supervisor's Assoc.* ("*PERB Decision*"), 2010 WL 6771211, 43 PERB ¶ 4012 (June 4, 2010).

On October 26, 2007, the Association petitioned to decertify the PBA "as the representative for police department employees in the titles of assistant chief, captain, lieutenant and sergeant, and to certify the Association as the representative of the employees in those titles."  The move partially backfired when the City responded that the assistant chiefs should be excluded from *any* bargaining unit "because they are managerial employees."

The administrative law judge ("ALJ") rejected the Association's attempt to peel off the supervisors from the PBA but concluded that Eggleston and Yeager alone must be removed from the union.  Under the New York Public Employees' Fair Employment Act (also known as the "Taylor Law"), the PERB applies a four-factor test to determine whether an employee is

managerial.  N.Y. CIV. SERV. LAW § 201(7)(a).  After examining this standard in some depth, the ALJ found that:

> Eggleston and Yeager are managerial because they play a major role in personnel administration that is not of a routine nature. Eggleston and Yeager take the place of the chief when he is away or otherwise unavailable.  Each is in charge of a group of units and functions of the department and of the overall supervision of all departmental employees in those units and performing those functions.  Eggleston and Yeager evaluate the captains who work in the units for which they are responsible.
>
> In addition, the assistant chiefs represent the department in regular meetings with the City's attorneys in connection with both occupational injury leaves and disciplinary matters.  They represent management in labor/management meetings with the PBA. Eggleston, as assistant chief responsible for the patrol division, represented management in discussions with the PBA about the feasibility to moving to 12-hour shifts.

*PERB Decision*, 2010 WL 6771211.

Defendants cite this language, but it is nowhere near enough to justify the application of collateral estoppel at this stage of the proceedings.  As plaintiffs point out, the "managerial" test applied by the ALJ is distinct from the "duties" test set out in the FLSA's regulations.

"Pursuant to § 201.7(a) of the Act, a managerial employee is a person who formulates policy on behalf of an employer, is required to directly assist in the preparation and formulation of an employer's collective bargaining proposals, plays a major role in the administration of an agreement or plays a major role in personnel administration."  *In the Matter of United College Emps. of the Fashion Inst. of Tech.*, 2009 WL 8159622, 42 PERB ¶ 3018 (July 23, 2009).

This inquiry examines a different set of factors than the duties test under the

- 14 -

FLSA.  *Compare* 29 C.F.R. § 541.100(a), *with* N.Y. CIV. SERV. LAW § 201(7)(a).  Indeed, this inquiry appears to regulate a slightly distinct aspect of the employer–employee relationship, since it focuses more on plaintiffs' relationship with the union.  It is therefore doubtful that the "identity of issues" element is satisfied.  *Kipple*, 847 F. Supp. 2d at 477.

Equally important, defendants have not articulated how, if it all, the PERB's findings conclusively establish that either plaintiff's "primary duty" was the management "of the enterprise . . . or of a customarily recognized department or subdivision."  To make that determination, courts consider things like:  (1) the relative importance of exempt duties compared with other types of duties; (2) the amount of time the employee spends performing exempt work; (3) the employee's relative freedom from direct supervision; and (4) the relationship between the employee's salary and wages paid to subordinate who performed the same type of nonexempt work.  29 C.F.R. § 541.700(a).

The PERB decision does not answer those inquiries.  In reply, defendants point to a few findings made by the ALJ about some of plaintiffs' job duties.  Defs.' Reply, Dkt. No. 23 at 10.  But defendants have failed to explain how these findings defeat plaintiffs' present claims as a matter of law.  *See, e.g.*, *Karraopoulous v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 527 (E.D.N.Y. 2015) ("As these exemptions to the FLSA overtime requirement are considered to be affirmative defenses, the burden of proving that an employee is exempt rests on the employer.").  Accordingly, this argument will also be rejected.

### 2. **Salary Basis Test**[5]

Defendants contend that plaintiffs were paid on a salary basis because they received a yearly salary of at least $74,635.  Defs.' Mem. at 8.  According to defendants, it does not matter that the City deducted money from Eggleston's unused vacation pay because plaintiffs have not established that there was a practice of making such deductions.  *Id*.; Defs.' Reply at 6-7.  Plaintiffs respond that defendants' argument "ignores the reality that many positions have a 'salary' . . . yet are not exempt under the FLSA."  Pls.' Opp'n at 9.  According to plaintiffs, deductions based on schedule are impermissible under the FLSA.  *Id*.

Under the "salary basis" test, an employee is considered salaried if he "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  Although there are a few enumerated exceptions and some leeway for improper deductions, "[t]he overarching inquiry is whether the employer's practices reflect an 'objective intention to pay its employees on a salaried basis.'"  *Martinez*, 930 F. Supp. 2d at 521 (quoting *Yourman v. Guiliani*, 229 F.3d 124, 130 (2d Cir. 2000)).

Upon review, the Court declines to wade further into this dispute without the benefit of a discovery record.  At this juncture, defendants have failed to establish that plaintiffs' employment meets the duties test as a matter of law.  Because the duties test and the salary basis test are conjunctive requirements that must both be met in order for the executive

---

[5]  Defendants note that this baseline salary figure recently jumped up from $455 a week.  Although there appear to have been a number of changes to the DOL's regulations over the years, neither party asserts that the revisions impact the arguments under consideration.

exemption to apply, defendants' motion to dismiss on this basis will also be rejected.

### 3. **Plausibility**

Defendants contend that plaintiffs claims must nevertheless be dismissed because they have failed to specifically identify the week or weeks in which they allegedly worked more than forty hours.  Defs.' Mem. at 13.  Plaintiffs respond that the City is in possession of all the relevant timekeeping records.  Pls.' Opp'n at 15-16.  According to plaintiffs, the City "approved in writing every hour of overtime granted, and further directed in writing which of those overtime hours would be converted to comp time."  *Id*. at 16.

In support of this argument, defendants rely on three Second Circuit opinions addressing the sufficiency of pleadings alleging FLSA overtime claims against health-care companies:  *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013), and *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013).

In *Lundy,* three hospital employees brought a putative class action alleging FLSA and racketeering violations based on their employer's failure to compensate them for time worked during meal breaks, before and after scheduled shifts, and during required training sessions.  711 F.3d at 109.

After their racketeering claims were dismissed, the *Lundy* plaintiffs made multiple attempts to replead the FLSA claims with sufficient detail to satisfy the district court.  711 F.3d at 111-13.  However, when their fourth try at repleading again failed to pass muster under Rule 12(b)(6), the plaintiffs appealed in an effort to get some clarity on the pleading standard.  *Id*. at 113.

As a matter of first impression, the *Lundy* panel concluded "that in order to state a

plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." 711 F.3d at 114.  The panel went on to affirm the dismissal of the plaintiffs' FLSA claims as insufficiently pleaded because their generalized assertions about "typical" or "ordinarily" work schedules were "low-octane fuel for speculation, not the plausible claim that is required." *Id*.

In *Nakahata*, the Circuit considered yet more appeals from the dismissal of the complaint in putative class actions brought by the same firm that filed *Lundy*. *Nakahata*, 723 F.3d at 195.  As the Second Circuit explained, the four distinct appeals in *Nakahata* "are but a few among many such actions brought by a single law firm . . . premised on a stock set of allegations concerning underpayment in the healthcare industry." *Id*. at 195-95.

As in *Lundy*, the *Nakahata* plaintiffs were a group of current and former healthcare employees brought a putative class action alleging FLSA and racketeering claims based on their employers' failure to compensate them for work during meal breaks, before and after shifts, and during training sessions.  723 F.3d at 195.  Again, however, the Circuit affirmed the dismissal of the FLSA claims for lacking in specificity, since the *Nakahata* plaintiffs relied on the same boilerplate set of allegations that were at issue in *Lundy*. *Nakahata*, 723 F.3d at 200-01.

Following *Lundy* and *Nakahata*, the Circuit considered an FLSA claim brought by an individual plaintiff who alleged that she had not been paid overtime for her work recruiting people to sign up for the defendant's health care services. *Dejesus*, 726 F.3d at 85. Although the plaintiff alleged she had worked more than forty hours during "some or all weeks" of her employment, the district court dismissed her claim after concluding that, *inter alia*, she had "fail[ed] to set forth the precise position she held, any approximation of the

number of unpaid overtime hours worked, her rate of pay, or any approximation of the amount of wages due." *Id*. at 87 (citation omitted).

On appeal, the *Dejesus* panel affirmed the lower court's dismissal because the plaintiff had provided even *less* factual specificity than the plaintiffs in *Lundy* or *Nakahata*. 726 F.3d at 89. As the panel explained, the plaintiff's "complaint tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation, but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Dejesus*, 726 F.3d at 89.

Defendants contend that the application of this line of authority necessitates the dismissal of plaintiffs' FLSA claims. Defs.' Mem. at 12-16. According to defendants, plaintiffs "have not identified one single week in which they worked more than forty hours." *Id*. at 14.

Plaintiffs respond by pointing out that they are at a bit of a disadvantage here: they've pleaded that (1) they worked at least forty hours a week; (2) they worked hours in addition to this forty-hour schedule at the direction of City officials; (3) the City required them to submit all of this time (including overtime) for recording and processing; (4) the City maintained these records and promised to pay overtime where appropriate; and (5) the City has failed to pay the appropriate overtime. Pls.' Opp'n at 15-16. In plaintiffs' view, they need discovery of the City's records, which will show the overtime and comp time totals. *Id*. at 16.

Upon review, plaintiffs have stated plausible claims under the FLSA. As Judge Sack noted in *Dejesus*, *Lundy* and *Nakahata* each

> reflect a tension among, *inter alia*, (1) the frequent difficulty for
> plaintiffs in such cases to determine, without first having access to
> the defendant's records, the particulars of their hours and pay in any

> given time period; (2) the possible use by lawyers representing
> plaintiffs in such cases of standardized, barebones complaints
> against any number of possible defendants about whom they have
> little or no evidence of FLSA violations for the purpose of identifying
> a few of them who might make suitable defendants—which is to say,
> the ability to engage in "fishing expeditions"; and (3) the modern
> rules of pleading established by the Supreme Court in [*Iqbal* and
> *Twombly*].

*Dejesus*, 726 F.3d at 86.  The same recognition is apparent in *Lundy*, where the panel

emphasized that the plausibility analysis is "a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  711 F.3d at 114 (quoting *Iqbal*,

556 U.S. at 679).

This case is not like *Lundy* or *Nakahata*, both of which tried to parlay boilerplate

pleadings of amorphous harm into costly and time-consuming fishing expeditions against a

whole host of defendants.  As plaintiffs emphasize in opposition, there is no possibility of a

fishing expedition here—neither plaintiff claims any work "off the clock" was done without the

City's knowledge or any work that would otherwise be unrecorded.  Pls.' Opp'n at 16.  Rather,

this case involves two plaintiffs seeking to recover from their longtime employer for unpaid

time recorded in defendants' records.  Because the concerns of *Lundy* and *Nakahata* are

inapplicable in this case, defendants' motion to dismiss on this basis will be denied.

### B.  FLSA Retaliation

Defendants contend that plaintiffs' retaliation claim must be dismissed because these

allegations were made "upon information and belief."  Defs.' Mem. at 16-17.  According to

defendants, plaintiffs have failed to allege that they "had a good-faith belief that there was a

violation of the FLSA" or that they "put[ ] the City on reasonable notice that they were

complaining about a violation of statutory rights, as opposed to complaining about an alleged

verbal agreement or past practice." *Id*. at 17.

Under the FLSA, it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). "Thus, to state a retaliation claim under the FLSA and NYLL, a plaintiff must plead: '(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Henry v. Nannys for Grannys Inc.*, 86 F. Supp. 3d 155, 160 (E.D.N.Y. 2015) (quoting *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010)).

As with its substantive provisions, "the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 113-14 (2d Cir. 2015) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013)).

For instance, "[i]t is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA." *Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017) (summary order). Indeed, "an employee may premise a section 215(a)(3) retaliation action on an oral complaint made to the employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Id*. at 107 (quoting *Kasten v. Saint–Gobain Performance Plastics Corp.*, 536 U.S. 1, 14 (2011)).

Upon review of this general body of case law, defendants' argument will be rejected. As plaintiffs point out in opposition, this claim is pleaded in substantial factual detail. Pls.'

Opp'n at 12-14.  In brief, plaintiffs allege that the City brought the hammer down on both of them after Eggleston challenged defendants' calculation of his separation benefits.  According to the complaint, not only did defendants single out plaintiffs for a change in schedule, they also threatened to turn them in to the State Comptroller and suggested plaintiffs would be on the hook to repay the City for all their unused lunch time.  Contrary to defendants' claim, the only allegations pleaded on information and belief are that (1) other employees were not subjected to the same retaliatory behavior and (2) the motive for at least one deduction was retaliatory.  *Id*. at 12.

These allegations are sufficient to satisfy the pleading requirements at this early stage of litigation.  *See, e.g.*, *Jian Zhong Li v. Oliver King Enters., Inc.*, 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015) (noting that a retaliation plaintiff need not meet all the elements of a *prima facie* case under the *McDonnell Douglas* burden-shifting test because at the pleadings stage the Court is only making a general assessment of the plausibility of the claim).  Accordingly, this argument will be rejected.

### C. <u>Breach of Contract & Unjust Enrichment</u>

Finally, defendants contend that plaintiffs' breach of contract and unjust enrichment claims must be dismissed because they are based on an unauthorized "verbal agreement."  Defs.' Mem. at 18.  According to defendants, neither the City's Corporation Counsel nor the Police Chief "have the authority to bind the City."  *Id*. at 19.  Plaintiffs respond that defendants have mischaracterized their claims as a "side deal" or a "back-room deal."  Pls.' Opp'n at 19.  As plaintiffs explain, they reached an agreement with the City after the 2010 PERB ruling that kept their employment arrangement largely unchanged in exchange for an end to further administrative wrangling.  *Id*. at 20-21.  According to plaintiff,

the City Code explicitly obligates defendants to pay overtime to Eggleston and Yeager. *Id*. at 21.

Upon review, the Court declines to dismiss these claims at this time.  Defendants insist that, whatever arrangement plaintiffs think they had with City officials, it is unenforceable against the City.  It is true that "[a] municipality is not liable for breach of contract when an official of the municipality has exceeded his authority." *Kerlikowske v. City of Buffalo*, 758 N.Y.S.2d 739 (N.Y. App. Div. 4th Dep't 2003).  But *Kerlikowske* does not necessarily defeat plaintiffs' claims as a matter of law.  There, the plaintiff relied on letters he sent to the Mayor and the Common Council in which he agreed to change the date of his resignation in exchange for a cash payout for his unused vacation leave. *Kerlikowske*, 758 N.Y.S.2d at 739.

The Appellate Division modified the lower court's decision and dismissed the plaintiff's complaint, reasoning that neither the Direct of Operations (who had signed off on the letter to the Mayor) nor the President of the Common Council was authorized to enter into a binding contract under the City Charter. *Id*.

It should be obvious, but the City of Buffalo's Charter does not control this case.  The defendants' opening memorandum of law does not specifically identify the portions of the City of Binghamton's Code that address this question.  Defs.' Mem. at 18-20.  However, plaintiffs suggest that the relevant provision explicitly makes Assistant Chiefs eligible for overtime with the approval of the Police Chief.  Pl.'s Opp'n at 21.  In sum, dismissal of these claims at the pleadings stage would be premature.  Accordingly, this argument will also be rejected.

## V.  CONCLUSION

Therefore, it is

ORDERED that

1.  Plaintiffs' NYLL claims (Eighth, Ninth, Tenth, and Eleventh Causes of Action) are DISMISSED;

2.  Defendants' motion to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Twelfth, and Thirteenth Causes of Action is DENIED; and

3.  Defendants shall file and serve an answer to the remaining causes of action[6] on or before September 22, 2020.

IT IS SO ORDERED.


Dated:  September 2, 2020
        Utica, New York.

_____
United States District Judge

---

[6]  The revised numbered complaint asserts FLSA claims for overtime, comp time, and holiday pay violations (Counts One through Six), an FLSA claim for retaliation (Count Seven), and state law claims for breach of contract and unjust enrichment (Counts Twelve and Thirteen).