## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This sets forth a Confidential Settlement Agreement and General Release ("Agreement") between Plaintiffs David Eggleston and William Yeager (collectively "Plaintiffs"), and Defendants City of Binghamton ("City") and Clarence E. ("Chuck") Shager, Jr. (collectively "Defendants") in full and complete settlement of all known issues concerning Plaintiffs' employment with the City. As used in this Agreement, "Employer" shall mean the City and its directors, officers, employees (including but not limited to Clarence E. ("Chuck") Shager, Jr.), and agents (in their individual and representative capacities); "Shager" shall mean Clarence E. ("Chuck") Shager, Jr. and his heirs, executors, administrators, and assigns; "Eggleston" shall mean David Eggleston and his heirs, executors, administrators, and assigns; and "Yeager" shall mean William Yeager, and his heirs, executors, administrators, and assigns. Yeager and Eggleston will sometimes be referred to herein as "the Plaintiffs". The City and Shager will sometimes be referred to herein as "the Defendants." The City, Shager, Eggleston and Yeager will sometimes be referred to herein as "the parties".

## RECITALS

**WHEREAS**, on January 15, 2020, Plaintiffs filed a lawsuit against the City and Shager in the United States District Court for the Northern District of New York, Case No. 3:20-cv-00056-DNH-ML ("Action"), alleging that Defendants were liable to Plaintiffs for damages for unpaid overtime compensation under the Fair Labor Standards Act of 1938 (29 U.S.C. §§ 201, et seq.) ("FLSA") and the New York State Labor Law ("NYLL"); retaliation under the FLSA, and breach of contract and unjust enrichment under the New York common law, which Defendants have from the outset denied and continue to deny; and

**WHEREAS**, on October 1, 2020, Defendants duly filed an Answer to Plaintiffs' Complaint, in which Defendants denied that they violated the FLSA, NYLL or the New York common law, and raised Affirmative Defenses to the claims in Plaintiffs' Complaint; and

**WHEREAS**, on June 2, 2021, Plaintiffs filed an Amended Complaint removing their NYLL claims and alleging that Defendants were liable to Plaintiffs for damages for unpaid overtime compensation and retaliation under the FLSA, and breach of contract and unjust enrichment under the New York common law, which Defendants have from the outset denied and continue to deny; and

**WHEREAS**, on June 16, 2021, Defendants duly filed an Answer to Plaintiffs' Amended Complaint, in which Defendants denied that they violated FLSA, or the New York common law, and reasserted their Affirmative Defenses to the claims in Plaintiffs' Complaint; and

**WHEREAS**, without any admissions of fault or liability by any party, the parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement, and the dismissal of the Action with prejudice; and

**WHEREAS**, Plaintiffs have been represented and advised by counsel; and

**NOW THEREFORE**, in consideration of the mutual terms, conditions and covenants herein set forth, the receipt and sufficiency of which are hereby acknowledged, and in full and complete settlement of all matters between the parties, the parties agree that the foregoing Recitals are incorporated in and made part of this Agreement by reference, and further agree as follows:

1. Separation Date. Eggleston agrees that his employment with the City ended as of July 12, 2019 when he resigned, and Yeager agrees that his employment with the City ended as of February 27, 2021 when he retired. Plaintiffs agree that Employer has no obligation to rehire Plaintiffs, and Plaintiffs agree that pursuant to this Agreement they will not in the future apply for employment with Employer.

2. No Additional Compensation Due. Plaintiffs agree that what is set forth in this Agreement includes the entire consideration to which Plaintiffs are entitled and that Plaintiffs are not entitled to any other payments for hours worked, bonuses, vacations, holidays or to any form or kind of payment, allowance, compensation, benefits, or reimbursement. Plaintiffs agree not to seek any further compensation in connection with the matters encompassed in this Agreement or arising from their employment with the City.

3. Consideration. In consideration for the promises that Plaintiffs make in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, so long as Plaintiffs provide a signed, executed copy of this Agreement, together with all necessary settlement documentation, including IRS Forms W-4 and W-9 from Plaintiffs and IRS Form W-9 from Hinman, Howard & Kattell LLP, and does not breach this Agreement, Plaintiffs will be eligible to receive a total of $130,000 from the City within 30 days of execution of this Agreement by all parties as follows:

    a. The City will pay Eggleston a payment in the gross amount of $9,672.59 less applicable withholdings and deductions. This amount represents back pay wage damages from the year 2019 and will be reported via an IRS W-2 Form.
    b. The City will pay Yeager a payment in the gross amount of $26,237.01 less applicable withholdings and deductions. This amount represents back pay wage damages from the year 2021 and will be reported via an IRS W-2 Form.
    c. The City will pay Eggleston a payment in the gross amount of $3,000. This amount represents non-wage damages and will be reported via IRS Form 1099.

    d. The City will pay Yeager a payment in the gross amount of $6,000. This amount represents non-wage damages and will be reported via IRS Form 1099.

    e. The City will pay Plaintiffs' attorneys Hinman, Howard & Kattell LLP in the amount of $85,090.40. This amount represents part of Plaintiffs' attorney fees and will be reported via IRS Form 1099.

    f. The City will report the back wages in paragraphs "a" and "b" to the New York State Retirement System as wages earned by Eggleston and Yeager respectively in those years and will take all steps to have such income included in Eggleston and Yeager's calculation of income for retirement payment purposes.

4. <u>Releases</u>.

    a. In consideration for this Agreement and payment of the Consideration, Plaintiffs do hereby release, acquit and forever discharge Defendants and their respective predecessors and successors in interest, affiliated entities and/or persons, heirs and assigns, past, present or future officers, directors, employees, agents, legal representatives, insurers, and affiliates from any claim, demand, action, or a cause of action, known or unknown, which arose at any time from the beginning of time to the date Plaintiffs execute this Agreement for injunctive relief, declaratory relief, physical injury, personal injury, and injury of any and all other kinds, and/or any and all other kinds of alleged damages, or other monetary obligation, or obligation of any other sort, including but not limited to, any and all compensatory damages, emotional distress damages, punitive damages, costs, attorneys' fees, and any and all other kinds of damages that are based in whole or in part on any act or omission occurring before this Agreement becomes effective. Without limiting the foregoing general release, Plaintiffs release Defendants from all rights relating to, arising out of, or in any way connected with Plaintiffs' employment with the City, compensation or benefits payable in connection with their employment and/or assignment or the cessation of their employment, including (without limitation) any claim, demand, action, cause of action, including claims for attorneys' fees, based on but not limited to:

        i. Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Older Workers Benefit Protection Act of 1990, the Occupational Safety and Health Act of 1970, the Worker Adjustment and Retraining Notification Act of 1989, the National Labor Relations Act of 1935, the Sarbanes Oxley Act of 2002, the

       Fair Credit Reporting Act, the New York State Human Rights Law, N.Y. Exec. Law § 296, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, the New York Labor Law, the New York Fair Credit Reporting Act, as well as any other federal, state, or local statute, regulation, or common law regarding employment, employment discrimination, retaliation, equal opportunity, or wage and hour;

  ii. any other federal, state, and/or local law or ordinance that relates to employers, employees, or the workplace; any existing or potential entitlement under any of the Defendants' programs or plans, including wages or other paid leave; any state constitution and/or the United States Constitution; any existing or potential agreement, contract, representation, policy, procedure, or statement (whether any of the foregoing are express or implied, oral or written);

  iii. any claims arising under any other federal, state and local fair employment practices law, disability benefits law, whistleblowing law/statute, and any other employee or labor relations statute, executive order, law or ordinance, and any duty or other employment-related obligation, claims arising from any other type of statute, executive order, law or ordinance; claims arising from contract or public policy, as well as tortious cause of conduct, breach of implied covenant of good faith and fair dealing, breach of contract, intentional and/or negligent infliction of emotional distress, invasion of privacy, defamation, wrongful discharge, negligence, discrimination, sexual harassment, and retaliation, together with all claims for monetary and equitable relief, punitive and compensatory relief and attorneys' fees and costs; and

  iv. participation in any class, collective, or representative action against any of the Defendants.

Plaintiffs understand that the intent of this subsection of Section 4 is for them to comprehensively waive and release Defendants from any and all claims relating either directly or indirectly to or arising from their employment with the City. Plaintiffs further understand that the recitation of federal, state, and common law waivers in this Section is not an exhaustive list. Rather, this Agreement waives claims and releases against the Defendants from *all* claims both generally and as specifically stated through the date they sign this Agreement; however, nothing in this Agreement is intended to waive claims that may not be waived under applicable law.

**Plaintiffs understand that this release means that they have forfeited their right to sue Defendants in arbitration, court, or otherwise, for any**

      **reason, for any event happening up to and through the date of Plaintiffs' signature on this Agreement.**

      b. This release provision shall be construed to release all claims to the full extent allowed by law. If any term or provision of this paragraph is declared unenforceable by a court or other tribunal of competent jurisdiction, it shall not adversely affect the enforceability of the remainder of this paragraph.

      c. As a condition precedent to payment of the Consideration set forth in Paragraph 3, Plaintiffs shall cause their counsel of record in the Action to execute and deliver to Defendants' counsel the Stipulation of Dismissal with Prejudice attached hereto as Exhibit A for filing with the Court in the Action, to be maintained in accordance with the terms herein.

5. <u>Claims Excluded.</u> Notwithstanding any other provision of this Agreement, the Releases in Section 4 above do not waive or release any claim for breach or enforcement of this Agreement. Further, notwithstanding any other provision of this Agreement, this Agreement will not prevent Plaintiffs from filing a charge, giving testimony or participating in any investigation conducted by the Department of Labor or any duly authorized agency of the United States or any state; however, Plaintiffs are waiving and releasing all rights to recover money or other individual relief in connection with any such investigation or proceeding.

6. <u>Covenant not to Sue.</u> Plaintiffs represent and warrant that no lawsuits, charges, or administrative proceedings have been initiated by them, individually and/or jointly, against Defendants, except the lawsuit referenced herein. Plaintiffs recognize and agree that Defendants are entering into this Agreement relying on this representation and warranty and, in its absence, would not have entered into this Agreement. Should Plaintiffs violate any aspect of this Section, they agree that any suit shall be null and void and must be summarily dismissed or withdrawn. Plaintiffs also agree that if a claim or charge of any kind should be raised, brought, or filed in their name or on their behalf, Plaintiffs waive any right to, and agree not to take any resulting award. To the maximum extent permitted by law, Plaintiffs will not seek, will not be entitled to recover, and agree to waive any monetary benefits or recovery against Defendants in connection with any claim, charge or proceeding from any action against Defendants before any federal, state, or local administrative agency or before any federal, state, or local court, without regard to who has brought such complaint, lawsuit, or charge.

7. <u>Non-Cooperation.</u> To the fullest extent permitted by law, Plaintiffs agree not to encourage, cooperate with, aid or assist in any way, including, but not limited to, testifying at any deposition, hearing or trial, any other potential or actual claimants or plaintiffs that have, or may have in the future, any claims, actions, lawsuits or charges against Defendants. Such claimants or plaintiffs may include both current and former employees, or individuals who are or may be thinking of pursuing an action against Defendants. Plaintiffs may cooperate only if compelled to testify

under oath pursuant to a lawfully issued subpoena or other similar legal process and agrees that such cooperation will be in a form no more extensive than necessary. However, nothing in this provision prohibits the reporting of violations of federal, state or local law or regulation to, or discussing any such possible violations with, any governmental agency or entity authorized to receive such information, such as the Equal Employment Opportunity Commission, the Securities Exchange Commission, the Occupational Safety and Health Administration, or the Department of Defense, including by initiating communications directly with or responding to any inquiry from or providing testimony before any such agency or entity, or to otherwise make disclosures protected under whistleblower provisions of federal law or regulation.

8. <u>Acknowledgements</u>. Plaintiffs acknowledge and agree that:

   a. Plaintiffs are represented by counsel, and have read, understood, and knowingly entered into this Agreement without fraud, duress, or any undue influence;

   b. Plaintiffs are receiving consideration from Defendants pursuant to this Agreement to which Plaintiffs would not otherwise be entitled;

   c. Plaintiffs agree that the amounts of consideration they are receiving are reasonable considering their claims and the uncertainties of litigation; and likewise agree that the amount of costs and attorneys' fees are fair and reasonable considering the litigation that has taken place in the Action;

   d. Plaintiffs have had a reasonable time to read, review, and consider the terms of this Agreement; and

   e. Plaintiffs are not waiving rights or claims that may arise after the date this Agreement is signed.

9. <u>Non-admission</u>. By entering into this Agreement, Defendants do not admit any wrongdoing or liability.

10. <u>Non-Disparagement</u>.

    a. Plaintiffs agree not to, at any time, engage in any action or conduct, including the communication of any public statement or statement likely to become public, that either directly or indirectly disparages, maligns, denigrates, mistreats, or hurts Defendants, or that results in the disparagement, mistreatment, or injury of Defendants.

    b. Defendants, including but not limited to the Mayor, Corporation Counsel's Office, Defendant Shager and any member of his office, agree not to, at any time, engage in any action or conduct, including the communication of any

public statement or statement likely to become public, that either directly or indirectly disparages, maligns, denigrates, mistreats, or hurts Plaintiffs, or that results in the disparagement, mistreatment, or injury of Plaintiffs. In response to requests for job references, Defendants shall limit their response to confirmation of Plaintiffs' dates of employment with the City and positions held. In the event that further information is requested, Defendants shall state that their policy is not to provide further information.

 c. The foregoing shall not be violated by truthful responses to mandatory legal process or governmental inquiry, those that are required by applicable law, regulation or legal process, made for the purpose of requesting or receiving confidential legal advice, or by private statements to any of the Releasees' officers, directors or employees, provided, that in the case of Defendants, such statements are made in the course of carrying out their duties pursuant to this Agreement. Plaintiffs acknowledge and accept that the City must comply with the Freedom of Information Law of the New York State Public Officers Law ("FOIL"), and pursuant to FOIL, the City may need to produce in the future certain documents pertaining to Plaintiffs or their employment with the City in response to a FOIL request.

11. <u>Tax Obligations</u>. Plaintiffs acknowledge that Defendants have not given any advice as to the characterization of payment received under this Agreement for any personal tax responsibility such payment may generate. By accepting the above-described payment, Plaintiffs agree to be responsible for their portion of all federal, state, or local income or employment taxes or contributions, or other federal or state payroll tax assessments, if any, arising by virtue of the payment. Should any federal, state, or local taxing authority challenge Plaintiffs' treatment or characterization of the payment, Plaintiffs acknowledge that Defendants have no obligation whatsoever to indemnify, defend, aid, pay or reimburse Plaintiffs for any underpayment, overpayment, penalty or interest charge the taxing authority may assess against or claim is due from Plaintiffs.

12. <u>Violation of Agreement</u>. Plaintiffs represent and warrant that Plaintiffs have not taken and will not take action contrary to the terms of this Agreement prior to executing this Agreement. Any such action contrary to the terms of this Agreement will constitute a material breach of this Agreement and Plaintiffs will forfeit all benefits that Plaintiffs may be entitled to under this Agreement, but all remaining provisions of the Agreement shall remain in full force and effect. Plaintiffs understand and agree that if any Party violates this Agreement, the prevailing party may recover attorney's fees in any action brought for breach of this Agreement.

13. <u>Applicable Law and Choice of Forum</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The parties, being desirous of having any disputes resolved in a forum having a substantial body of law and experience with matters contained herein, and the parties having a substantial connection with the State of New York, agree that any action or

proceeding with respect to this Agreement shall be brought in the United States District Court for the Northern District of New York, or if that is not possible in the state courts located in Broome County, New York. The parties consent to the personal jurisdiction of the state and federal courts of New York should a legal action to enforce this Agreement be necessary.

14. Severability. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning and not strictly for or against either party. If any provision or part of this Agreement is deemed to be invalid or unenforceable for any reason, such provision or part shall be treated as if it were deleted from the Agreement and the remainder of the Agreement shall remain in full force and effect, provided, however, that the parties will attempt to substitute a provision to ensure each party receives the full benefit of their bargain.

15. Entire Agreement. This Agreement constitute(s) the final, complete, and exclusive statement of the terms of the agreement between the parties pertaining to the subject matter of this Agreement and supersedes all prior and contemporaneous understandings or agreements of the parties. This Agreement may not be contradicted by evidence of any prior or contemporaneous statements or agreements. No party has been induced to enter into this Agreement by, nor is any party relying on any representation, understanding, agreement, commitment, or warranty outside those expressly set forth in this Agreement.

16. Modifications. This Agreement can only be amended, modified, rescinded, or otherwise altered by a writing signed by all parties.

17. Execution.

    a. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all together will constitute one Agreement, and shall become effective when counterparts have been signed by each: (i) David Eggleston; (ii) William Yeager; (iii) City of Binghamton; and (iv) Clarence E. ("Chuck") Shager, Jr. and delivered to the counterparties; it being understood that the Parties need not sign the same counterparts.

    b. The exchange of copies of this Agreement and of signature pages by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, or by combination of such means, shall constitute effective execution and delivery of this Agreement and may be used in lieu of the original Agreement for all purposes.

IN WITNESS WHEREOF, the parties hereto, by authorized representatives, have duly executed this Agreement.

Date: 7/8/22          By: _____
                          David Eggleston

Date: 7/8/22          By: _____
                          William Yeager

Date: 7/11/22         By: _____
                          Brian Seachrist, Esq., as Corporation
                          Counsel for the City of Binghamton

Date: 7/8/22          By: _____
                          Clarence E. ("Chuck") Shager, Jr.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK